UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 10266

MAGISTRATE JUDGE Alexander

| | |
|---|---|
| TANG PHOEURK <br> # A 25-273-331 <br><br> Petitioner <br><br> v. <br><br> JOHN D. ASHCROFT, Attorney General; <br> BRUCE CHADBOURNE, Interim <br> Field Office Director for Detention and <br> Removal, Boston Field Office, Bureau of <br> Immigration and Customs Enforcement; <br> KATHLEEN M. DENNEHY, Acting <br> Commissioner, Massachusetts Dep't of <br> Correction, and the Bureau of Immigration <br> and Customs Enforcement (BICE) <br><br> Respondents, | Civ. No. _____ <br><br> Petition for a Writ of Habeas Corpus |

RECEIPT # 53628
AMOUNT $5
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 2/9/04

## PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner, Mr. Tang Phoeurk, by and through undersigned counsel, hereby petitions this Court for a writ of habeas corpus to remedy his unlawful detention, and to enjoin his continued unlawful detention by the Respondents. In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

### PARTIES

1. Petitioner Tang Phoeurk is a native and citizen of Cambodia who was a lawful permanent resident of the United States. Mr. Phoeurk was ordered deported on September 13, 1996 and was taken into Immigration and Naturalization Service ("INS")

1

custody on August 26, 2002. He has been detained by INS and the Bureau of Immigration and Customs Enforcement (BICE)[1] for over 17 months.

2. Respondent John D. Ashcroft is the Attorney General of the United States and is responsible for the administration of BICE and the implementation and enforcement of the immigration laws. As such, he is the ultimate legal custodian of the Petitioner.

3. Respondent Bruce Chadbourne is the Interim Field Office Director for Detention and Removal, Boston Field Office, Bureau of Immigration and Customs Enforcement, Department of Homeland Security. As such, he is the local BICE official who has immediate custody of the Petitioner.

4. Respondent Kathleen M. Dennehy is the Acting Commissioner of the Massachusetts Dep't of Correction. Because BICE contracts with state prisons such as Suffolk County House of Corections in Boston, Massachusetts to house immigration detainees such as the petitioner, she has immediate custody of the petitioner.

5. Respondent Bureau of Immigration and Customs Enforcement is the agency charged with implementing and enforcing the immigration laws.

## CUSTODY

6. Petitioner is detained at the Suffolk County House of Corrections in Boston, Massachusetts. BICE has contracted with the Suffolk County Sheriff's Department to house immigration detainees such as Mr. Phoeurk. Petitioner was previously detained at the Bristol County House of Corrections in North Dartmouth, Massachusetts, which also

---

[1] In 2003, the INS ceased to exist and its detention and removal authority was transferred to the Bureau of Immigration and Customs Enforcement (BICE), which is part of the Department of Homeland Security (DHS).

contracted with BICE to house immigration detainees. Petitioner is under the direct control of Respondents and their agents.

## JURISDICTION

7. This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. This Court has jurisdiction under 28 U.S.C. § 2241, art. I § 9, cl. 2 of the United States Constitution ("Suspension Clause"), and 28 U.S.C. § 1331, as the Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. See Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491 (2001).

## VENUE

8. Venue lies in the District of Massachusetts because Mr. Phoeurk is currently detained at Suffolk County House of Corrections at 20 Bradston Street Boston, Massachusetts 02118. Venue in the District of Massachusetts is also proper because Petitioner is in the custody of Respondent Bruce Chadbourne, Interim Field Office Director of this District. 28 U.S.C. § 1391.

## EXHAUSTION OF REMEDIES

9. Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action. After the Supreme Court

decision in Zadvydas, the Department of Justice issued regulations governing the custody of aliens ordered removed. See 8 C.F.R § 241.4. Petitioner was ordered deported on September 13, 1996 and was taken into INS custody on August 26, 2002. At his "90-day" [2] custody review on December 23, 2002, the INS decided to continue his detention. See Ex. 1. In a decision dated March 5, 2003, BICE's Headquarters Post-Detention Unit ("HQPDU") informed Petitioner that it would continue to keep him in custody. See Ex. 2. The custody review regulations do not provide for appeal from a HPQDU custody review decision. See 8 C.F.R. § 241.4(d).

    10. On March 14, 2003, Petitioner filed a petition for writ of habeas corpus *pro se*. The district court granted BICE's motion to dismiss without a written decision due to Petitioner's failure to reply to the motion to dismiss. See Ex. 3. In its motion to dismiss, the government argued that Petitioner's deportation was "reasonably foreseeable" in light of the March 2002 Memorandum of Understanding ("MOU") between the United States and Cambodia. See Ex. 4. However, more than ten months have passed since Petitioner's *pro se* habeas petition was filed, yet he still remains detained without any indication from the governments of the United States or Cambodia that his repatriation is reasonably foreseeable. A new habeas petition is proper in light of these new facts.

    11. No statutory exhaustion requirements apply to Petitioner's claim of unlawful detention.

---

[2] This review actually occurred almost four months after he was taken into immigration custody.

## STATEMENT OF FACTS

*A.   Background*

12. Petitioner, Tang Phoeurk, was born in Cambodia in 1972. During the genocide, he and his family fled to Thailand, where they lived in a refugee camp before immigrating to United States as refugees in 1981. Mr. Phoeurk later adjusted to lawful permanent resident status. He left Cambodia without a passport or any official exit visa issued by the government of Cambodia, and does not presently have a Cambodian passport. He has nine siblings all of whom are either United States citizens or lawful permanent residents. Mr. Phoeurk lived with his mother and his siblings in Lowell, Massachusetts before he was incarcerated.

13. On February 27, 1992, Mr. Phoeurk was convicted of assault with a firearm with intent to commit murder and sentenced to 15-20 years. On September 12, 1995, the INS charged Mr. Phoeurk with being deportable for having been convicted of an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(a)(iii). He was ordered deported to Cambodia by the Immigration Judge on September 13, 1996. He did not appeal the decision of the IJ. His order of deportation was therefore final on or about October 13, 1996.

14. In March 2002, the United States and Cambodia entered a Memorandum of Understanding which allowed for the repatriation of Cambodian nationals. As noted under the "Fundamental Principles" in the MOU, "[e]ach repatriation request should be considered and decided individually, on a case-by-case basis without preconditions," allowing Cambodia to make the decision it deems appropriate in each particular case. See Ex. 4; see also Ex. 5, ¶ 10 (Declaration of Jay W. Stansell)

15. Upon Mr. Phoeurk's release from prison for good behavior on August 26, 2002, the Immigration Services took him into custody to await his deportation to Cambodia. He has been in immigration detention with a final order since then, for a period of more than seventeen months.

B.   *"90 Day" and Six Month Custody Reviews*

16. INS first reviewed Mr. Phoeurk's detention status on or about December 23, 2002, after the 90-day removal period pursuant to Post-Order Custody Review procedures at 8 C.F.R. § 241.4.  In a letter dated December 23, 2002, INS denied Mr. Phoeurk's request for release stating that he was still a danger to the community.[3] See Ex. 1. Although the INS conceded that the process of removal is a "time consuming process," it did not state whether travel documents had been requested from the Cambodian government or provide any repatriation information specific to Mr. Phoeurk's case. See Ex. 1. ("Although a time-consuming process, the Service feels that we will be able to procure a travel document for your removal.")

17. As a result of the continued detention, Mr. Phoeurk's case was transferred to the Headquarter Post Detention Unit (HQPDU) in February 2003. See Ex. 6.

---

[3] Though under Zadvydas, Mr. Phoeurk has the right to be free from indefinite detention regardless of whether BICE considers him a danger to the community, Mr. Phoeurk contests INS's determination of dangerousness. Although his crimes were quite serious, he committed them many years ago as a young man, and has matured and grown during the eleven+ years he has spent in custody. See Ex. 7, 8, 9, 10 (describing Mr. Phoeurk's good behavior and development in prison, including completion of the GED and excellent performance in an alternatives to violence project and an emotional and spiritual healing workshop). All these rehabilitation initiatives, together with the early completion of his criminal sentence with MCI Shirley demonstrate that Mr. Phoeurk is no longer a threat to the community. See Ex. 7. Nor is he a flight risk, as his family continues to live in Lowell, Massachusetts. See Ex. 7. Finally, as the attachments to his November 16, 2003 request for release to HQPDU demonstrate, he has an offer of employment and potential for successful reintegration into the community. See Ex. 19A.

18. Six months after he was taken into custody, HQPDU conducted another review. In a form letter dated March 5, 2003, BICE informed Mr. Phoeurk that he would not be released given the recent signing of the MOU for repatriation between the United States and Cambodia and the "recent success that the Service has had in repatriating Cambodian nationals." See Ex. 2. BICE did not indicate how many Cambodian nationals it had in fact repatriated, whether it had contacted the Cambodian government with respect to Mr. Phoeurk's case, or whether it had received any information from Cambodia regarding the status of Mr. Phoeurk's travel documents. Nor did it give an indication of when it expected Mr. Phoeurk's travel documents would issue. Indeed, it gave no information concerning the existence or status of efforts to deport *Mr. Phoeurk*, relying instead on a generic pronouncement pertaining to all Cambodians. See Ex. 2. ("Given the recent success that the Service has had in repatriating Cambodian nationals, the Service anticipates that a travel document will be issued in the reasonably foreseeable future and your removal will be carried out as ordered.")

C.   *Eleven Months Later: BICE's Inability to Show That Mr. Phoeurk Deportation is "Reasonably Foreseeable" Despite His Full Cooperation*

19. In the eleven months that have passed since Mr. Phoeurk's last custody review, BICE has not notified Mr. Phoeurk of any progress in his repatriation. In its June 18, 2003. Memorandum of Law in Support of Its Motion to Dismiss Petitioner's *pro se* habeas petition filed in March, the government asserted that at the time Mr. Phoeurk was taken into custody, "BCIS [sic] began efforts to secure the necessary travel documents from the Cambodian government to effect the Petitioner's return to Cambodia. The BCIS [sic] sent a request for the travel documents to the Cambodian Embassy in Washington,

7

D.C. in compliance with the Memorandum of Understanding which established the process for repatriation between the two nations." (citing Attachments A and B). However, Attachments A (the MOU) and B (Declaration of Deportation Officer Tammy Cyr-Talbott) submitted by the government do not mention a BICE [or BCIS] request in Mr. Phoeurk's case or substantiate its claim that BICE [or BCIS] had begun efforts to secure the necessary documentation. See Ex. 4A and B. The declaration of Deportation Officer Tammy Cyr-Talbott simply states that "[a]lthough Tang Phoeurk was not in the group interviewed during the October [2002] interviews, it is anticipated that Cambodian officials will return in the near future to interview additional Cambodian nationals who are subject to final orders of removal, including Mr. Phoeurk." See Ex. 4B. She does not give any specifics about Mr. Phoeurk to substantiate her belief that he (as opposed to the any of the other hundreds of Cambodians with final orders) would be among those to be interviewed in the reasonably foreseeable future. Indeed, she did not give any indication of whether BICE had received any information from the Cambodian government concerning Mr. Phoeurk.

20. To Mr. Phoeurk's knowledge, neither the United States nor Cambodia have arranged an interview between Cambodian officials and Mr. Phoeurk, and the government of Cambodia has not issued travel documents for him. Indeed, neither BICE nor the Cambodian government have provided any information regarding the likelihood that Cambodia would accept *Mr. Phoeurk* under the MOU in the reasonably foreseeable future.

21. BICE has never asserted that Petitioner has failed to cooperate in his deportation. To the contrary, Mr. Phoeurk, on his own initiative, and through the help of

8

friends and family, has tried to expedite his repatriation to Cambodia and release from custody. Petitioner first contacted the Cambodian Embassy in Washington D.C. to inquire about his case in May 2003, and was referred to the Ministry of Interior in Phnom Penh, Cambodia. See Ex. 11. Since then, Mr. Phoeurk and his advocate, Cecily Long, have contacted the Ministry of Interior five times to inquire about his case, most recently on November 3, 2003. See Ex. 12, 13, 14, 17, and 18A. Ms. Long has also contacted the Royal Embassy of Cambodia twice, asking for updates and offering to if do anything to facilitate the issuance of travel documents. See Ex. 15 and 16. To date, they have not received any response. See Ex. 20 (Declaration of Cecily Clark Long). Ms. Long also wrote Deportation Officer John Draine on November 4, 2003 on Mr. Phoeurk's behalf, asking about the status of his travel documents and offering to cooperate. See Ex. 18 ("Tang would like to know the status of his case and do everything that he can to cooperate in order that travel documents can be secured and he can be returned to Cambodia as soon as possible. If there is information that he needs to provide or anything that he can do to assist in the process he is more than willing to cooperate.") She followed up on November 5, 2003, by forwarding Officer Draine Mr. Phoeurk's November 1, 2003 letter to Ms. Meack at the Cambodian Ministry of Interior, expressing similar sentiment. See Ex. 18A. Finally, Mr. Phoeurk sent a request for release to HQPDU on November 16, 2003, with attachments showing that he had been rehabilitated, had an offer of employment, and could be successful reintegrated into the community. See Ex. 19.

D. *BICE has offered no evidence to suggest that repatriation in Mr. Phoeurk's individual case is reasonably foreseeable now*

22. On November 10, 2003, Ms. Long called BICE's Boston office to inquire about Mr. Phoeurk's case. After introducing herself and the reasons of her call, she was directed to Officer Draine. He indicated that, to his understanding, Cambodia was not issuing travel documents at this time and would not likely issue documents for someone with [Mr. Phoeurk's] background. See Ex. 20.

23. Given the very small percentage of Cambodians with final orders who have been repatriated to date, Mr. Phoeurk's deportation is not "reasonably foreseeable." See Ex. 6 (Declaration of Jay W. Stansell). Indeed, only 78 Cambodians of the approximately 1,000 (possibly 1,500) with final orders have been deported thus far. See Ex. 6 at ¶¶ 4, 9. "At the current rate, it would take about a decade to deport those 1,600 already eligible." See Ex. 21 (Deborah Sontag, "In A Homeland Far from Home," *New York Times Magazine*, November 16, 2003, p. 52). Moreover, evidence suggests that the rate of deportation will not increase any time soon. See Ex. 5 at ¶¶ 12.

24. Even if other Cambodians are repatriated in the upcoming months, there is no reason to believe that Mr. Phoeurk will be at the top of the list. See Ex. 5 at ¶ 10 ("Based upon reports of individuals who were interviewed by Cambodian officials, those officials are asking detainees a broad variety of questions, including how long they have been in the United States, how many children they have in the United States, how young they were when the left Cambodia, whether or not they are fluent in spoken Khmer (the language of Cambodia) or literate in written Khmer. These detailed questions of each potential deportee would seem to indicate some level of screening by Cambodia as to who it will and who it will not issue travel documents for.") Mr. Phoeurk has lived in the

United States since he was a boy and has no family remaining in Cambodia, which he does not remember, having fled as a child. He cannot write Khmer and fears that the Khmer spoken in Cambodia today is different from that he learned in the Cambodian communities in Thailand and the United States. Finally, despite Mr. Phoeurk's initiatives to expedite his repatriation to Cambodia, the government of Cambodia has not indicated whether or when it would interview Mr. Phoeurk to determine his eligibility of repatriation – a necessary precondition to issuing travel documents. See Ex. 4B, Declaration of Deportation Officer Tammy Cyr-Talbott ("The interview with Cambodian officials is the last step in the procedure before travel documents are issued by the Cambodian government.") Indeed, BICE has given no indication that it has received *any* response from Cambodia concerning Mr. Phoeurk.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

25. In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6), when "read in light of the Constitution's demands, limited an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. Id., 533 U.S. at 689. A "habeas court must [first] ask whether the detention in question exceeds a period reasonably necessary to secure removal." Id. at 701. If the individual's removal is not reasonably foreseeable, "the court should hold continued detention unreasonably and no longer authorized by statue." Id.

26. In determining the length of a reasonable removal period, the Court adopted a "presumptively reasonable period of detention of six months." Id. at 701. After six months, the government bears the burden of disproving an alien's "good reason to believe

that there is no significant likelihood of removal in the reasonably foreseeable future." See Zhou v. Farquharson, 2001 U.S. Dist. LEXIS 18239, *2-*3 (D. Mass. Oct. 19, 2001) (quoting and summarizing Zadvydas). Moreover, "[f]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.") Zadvydas, 533 U.S. at 701. BICE's administrative regulations also recognize that the HQPDU has a six-month period for determining whether there is a significant likelihood of an alien's removal in the reasonably foreseeable future. See 8 C.F.R. § 241.4(k)(2)(ii).

27. Evidence showing successful repatriation of other persons to the country at issue is not sufficient to meet the government's burden to establish that an alien petitioner will be deported within the reasonably foreseeable future. See Norlon Thompson v. INS, 2002 U.S. Dist. LEXIS 23936, *15-*17 (E.D. La. September 16, 2002) (government failed to show that alien's deportation to Guyana was reasonably foreseeable where the government offered historical statistics of repatriation to Guyana, but failed to show any response from Guyana on the petitioner's application for travel documents); Kacanic v. Elwood, 2001 U.S. Dist. LEXIS 21848 at *14 (E.D. Penn. November 8, 2002) (government's reliance on data concerning removals of other aliens to Yugoslavia did not satisfy Zadvydas because government failed to give information about the number of aliens that were *denied* travel papers and did not provide individualized information about the removed aliens that would allow "a meaningful comparison" of the removed aliens to the petitioner); Ablahad v. Ashcroft, 2002 U.S. Dist. LEXIS 17405 at *4 (N.D. Ill. September 6, 2002) (evidence that aliens have been deported to petitioner's country is not sufficient to carry the government's burden under Zadvydas). Rather, for the

government to meet its burden of showing that an alien's repatriation is reasonably foreseeable, it must provide some meaningful evidence particular to the individual petitioner's case. Compare Thompson, Kacanic, and Ablahad with Khan v. Fasano, 194 F. Supp. 2d 1134 at **2, 4, 9 (S.D. Cal. 2001) (eight month detention following final order was not unreasonable where INS requested travel documents for petitioner, Pakistani Consulate indicated that petitioner's travel document application had been forwarded to the appropriate ministry, meeting was scheduled with Pakistani government to discuss petitioner's case, and INS had successfully repatriated *476* Pakistani nationals during 2001, suggesting lack of "institutional barriers" to successful repatriation).

28. An alien who has been detained beyond the presumptive six months should be released where the government is unable to present documented confirmation that the foreign government at issue will agree to accept the particular individual in question. See Agbada v. Ashcroft, 2002 U.S. Dist. LEXIS 15797, *2 (D. Mass. August 22, 2002) (court "will likely grant" habeas petition after fourteen months if BICE "is unable to present document confirmation that the Nigerian government has agreed to [petitioner's] repatriation"); Zhou, 2001 U.S. Dist. LEXIS 18239 (ordering that the writ of habeas corpus issue within 60 days, given petitioner's 13-month detention and the INS's inability to assure the court that the paperwork from China was on its way); Abdu v. Ashcroft, 2002 U.S. Dist. LEXIS 19050 at *7 (W.D. Wash. February 28, 2002) (government's failure to offer specific information regarding how or when it expected to obtain the necessary documentation or cooperation from the foreign government

indicated that there was no significant likelihood of petitioner's removal in the reasonably foreseeable future).[4]

## CLAIMS FOR RELIEF

### COUNT ONE
### STATUTORY VIOLATION

29. Petitioner re-alleges and incorporates by reference paragraphs 1 through 28 above.

30. Petitioner's continued detention by the Respondents violates INA § 241(a)(6), as interpreted in Zadvydas. Mr. Phoeurk's six-month presumptively reasonable period for continued removal efforts passed nine months ago. For the reasons outlined above in paragraphs 1 to 28, Petitioner's removal to Cambodia is not reasonably foreseeable. The Supreme Court held in Zadvydas that the continued detention of someone after six months where deportation is not reasonably foreseeable is unreasonable and in violation of INA § 241.

---

[4] See also Kacanic, 2001 U.S. Dist. LEXIS 21848 (where alien had been detained for one year, lack of a definitive answer from foreign embassy as to issuance of travel documents – or any indication that a definitive answer was likely – showed that removal was not reasonably foreseeable); Mohamed v. Ashcroft, 2002 U.S. Dist. LEXIS 16179 at *7 (W.D. Wash. April 15, 2002 (granting writ of habeas where lack of definite answer from the foreign consulate indicated that no removal was likely in the reasonably foreseeable future).

## COUNT TWO

### SUBSTANTIVE DUE PROCESS VIOLATION

31. Petitioner re-alleges and incorporates by reference paragraphs 1 through 30 above.

32. Mr. Phoeurk's continued detention violates his right to substantive due process by depriving him of his core liberty interest to be free from bodily restraint. The Due Process Clause requires that the deprivation of Mr. Phoeurk's liberty be narrowly tailored to serve a compelling government interest. While the Respondents would have a compelling government interest in detaining Mr. Phoeurk in order to effect his deportation, that interest does not exist if Mr. Phoeurk cannot be deported. The Supreme Court in Zadvydas thus interpreted INA § 241 to allow continued detention only for a period reasonably necessary to secure the alien's removal because any other reading would go beyond the government's articulated interest -- to effect the alien's removal.

## COUNT THREE

### PROCEDURAL DUE PROCESS VIOLATION

33. Petitioner re-alleges and incorporates by reference paragraphs 1 through 32 above.

34. Under the Due Process Clause of the United States Constitution, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. The Petitioner in this case has been denied that opportunity as there is no administrative mechanism in place for the Petitioner to demand a decision, ensure that a decision will ever be made, or appeal a custody decision that violates Zadvydas.

15

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Grant Petitioner a writ of habeas corpus directing the Respondents to immediately release the Petitioner from custody;

3) Order Respondents to refrain from transferring the Petitioner out of the jurisdiction of the BICE Boston District Director during the pendency of these proceedings and while the Petitioner remains in Respondent's custody; and

4) Grant any other and further relief which this Court deems just and proper.


Respectfully submitted this 6th day of February, 2004

Respectfully submitted,

*Alexandra Dufresne*
Alexandra Dufresne, BBO #654959
Catholic Legal Immigration Network, Inc./
Boston College Immigration and Asylum Project
885 Centre Street
Newton, MA
(617) 552-0593 (voice)
(617) 552-2615 (fax)
alexandra.dufresne.1@bc.edu
for Petitioner Tang Phoeurk

## CERTIFICATE OF SERVICE

I, Alexandra Dufresne, hereby certify that I served a true copy of the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and the accompanying Petitioner's Memorandum of Points and Authorities in Support of His Petition for a Writ of Habeas Corpus, together with attached exhibits, on

Bruce Chadbourne, Interim Field Office Director
DHS/BICE: Detention and Removal Office
JFK Federal Building, 17th Floor
15 New Sudbury Street
Boston, MA 02203

by placing them in a FedEx dropbox on February 6, 2004 with delivery scheduled for Monday, February 9, 2004.

I also certify that I served a true copy of the above-mentioned documents (including exhibits) on

Attorney General Ashcroft
United States Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530-0001

And

Kathleen M. Denneby, Acting Commissioner, Mass. Dep't of Correction
Central Headquarters
50 Maple Street
Milford, MA 01757

By placing a copy of the above in the U.S. mail at Boston College Law School on February 6, 2004.

Dated: 2/6/04                                   _____Alexandra Dufresne_____
                                                Alexandra Dufresne