UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TANG PHOEURK  )
# A 25-273-331  )
  )
    Petitioner  )
  )   Civ. No. 04 10266 RCL
    v.  )
  )
JOHN D. ASHCROFT, Attorney General;  )
BRUCE CHADBOURNE, Interim  )
Field Office Director for Detention and  )
Removal, Boston Field Office, Bureau of  )
Immigration and Customs Enforcement;  )
KATHLEEN M. DENNEHY, Acting  )
Commissioner, Massachusetts Dep't of  )
Correction, and the Bureau of Immigration  )
and Customs Enforcement (BICE)  )
  )
    Respondents,  )
  )

### PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS PETITION FOR A WRIT OF HABEAS CORPUS

Introduction

Petitioner Tang Phoeurk, a Cambodian refugee, has been detained by the immigration authorities for more than seventeen months. Although Mr. Phoeurk was ordered deported in the fall of 1996 and has steadfastly sought to effect his deportation, the United States has not been able to deport him to Cambodia. Nor has the government met its burden of showing that Mr. Phoeurk's removal is "reasonably foreseeable." The Supreme Court has found such "indefinite" detention unlawful. Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491 (2001). Accordingly, Petitioner, by undersigned counsel,

hereby petitions this Court for a writ of habeas corpus to enjoin his continued unlawful detention by the respondents.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Petitioner Tang Phoeurk was born in Cambodia in 1972 and immigrated to the U.S. with his family in 1981, as refugees of the Khmer Rouge regime. Until 1992, Mr. Phoeurk lived as a lawful permanent resident in Lowell, Massachusetts, together with his mother and his nine siblings – all of whom are either U.S. citizens or lawful permanent residents. On February 27, 1992, Mr. Phoeurk was convicted of assault with a firearm with intent to commit murder and sentenced to 15-20 years. On September 12, 1995, the INS charged Mr. Phoeurk with being deportable for having been convicted of an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(a)(iii). The Immigration Judge ordered him deported to Cambodia on September 13, 1996. As Mr. Phoeurk did not appeal this decision, his order of deportation became final on November 8, 1996.

In March 2002, the United States and Cambodia signed a Memorandum of Understanding (MOU), intended to facilitate the repatriation of Cambodian nationals. Mr. Phoeurk was released from prison for good behavior on August 26, 2002, at which point the INS took him into custody to await his removal to Cambodia. He is currently being detained at the Suffolk County House of Corrections in Boston, Massachusetts. He has been detained by INS and the Bureau of Immigration and Customs Enforcement (BICE)[1] for a period of more than seventeen months.

INS first reviewed Mr. Phoeurk's detention status in December 2002, after the 90-day removal period, pursuant to Post-Order Custody Review procedures at 8 C.F.R. §

---

[1] In 2003, the INS ceased to exist and its detention and removal authority was transferred to the Bureau of Immigration and Customs Enforcement (BICE), which is part of the Department of Homeland Security (DHS).

2

241.4. In a letter dated December 23, 2002, INS denied Mr. Phoeurk's request for release, stating that he was still a danger to the community.[2] See Ex. 1.

As a result of the continued detention, Mr. Phoeurk's case was transferred to the Headquarter Post Detention Unit (HQPDU) in February 2003. Six months after Mr. Phoeurk was first taken into custody, HQPDU conducted another review. See Ex. 6. In a form letter dated March 5, 2003, HQPDU informed Mr. Phoeurk that he would not be released, given the recent signing of the MOU between the United States and Cambodia and the commencement of the repatriation program. See Ex. 2. However, BICE did not give any information concerning the existence or status of efforts to deport *Mr. Phoeurk*, relying instead on a generic pronouncement pertaining to all Cambodians. See Ex. 2. ("Given the recent success that the Service has had in repatriating Cambodian nationals, the Service anticipates that a travel document will be issued in the reasonably foreseeable future and your removal will be carried out as ordered.")

On March 14, 2003, Petitioner filed a petition for writ of habeas corpus *pro se*. The district court granted BICE's motion to dismiss without a written decision due to Petitioner's failure to reply to the motion to dismiss. See Ex. 3. In its motion to dismiss, the government argued that Petitioner's deportation was "reasonably foreseeable" – solely on the basis of the existence of the MOU. See Ex. 4. However, more than ten

---

[2] Though under Zadvydas, Mr. Phoeurk has the right to be free from indefinite detention regardless of whether BICE considers him a danger to the community, Mr. Phoeurk contests INS's determination of dangerousness. Although his crimes were serious, he committed them many years ago as a young man, and has matured and grown during the eleven years he has spent in custody. See Ex. 7, 8, 9, 10 (describing Mr. Phoeurk's good behavior and development in prison, including completion of the GED and excellent performance in an alternatives to violence project and an emotional and spiritual healing workshop). All these rehabilitation initiatives, together with the early completion of his criminal sentence with MCI Shirley demonstrate that Mr. Phoeurk is no longer a threat to the community. See Ex. 7. Nor is he a flight risk, as his family continues to live in Lowell, Massachusetts. See Ex. 7. Finally, as the attachments to his November 16, 2003 request for release to HQPDU demonstrate, he has an offer of employment and potential for successful reintegration into the community. See Ex. 19A.

months have passed since Petitioner filed his *pro se* habeas petition, yet he still remains detained without any indication from the governments of the United States or Cambodia that his own repatriation is reasonably foreseeable. A new habeas petition is proper in light of these new facts.

## ARGUMENT

I. Petitioner's Continued Detention Violates 8 U.S.C. § 1231(a)(6) Because He Has Been Detained Significantly Longer than the Presumptively Reasonable Period of Six Months and His Removal is Not "Reasonably Foreseeable"

In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6), when "read in light of the Constitution's demands, limited an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." Id., 533 U.S. at 689. The Supreme Court recognized six months as a presumptively reasonable duration for this period, and provided that after six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. Because Mr. Phoeurk has been detained for over seventeen months without receiving any indication from the U.S. or Cambodian governments on progress in his individual removal case, this court should hold his continued detention "unreasonable and no longer authorized by statute." Id. at 699-700.

**A. Petitioner Has Been Detained for Seventeen Months, Far Beyond the Six-Month Presumptively Reasonable Detention Period, and There Is No Significant Likelihood of His Removal in the Reasonably Foreseeable Future**

Mr. Phoeurk's seventeen-month detention "exceeds a period reasonably necessary to secure removal." Zadvydas, 533 U.S. at 699-700. However, Mr. Phoeurk does not

4

argue that he should be released merely because he has been held in excess of six months, as BICE suggests in its June 2003 Memorandum of Law in Support of its Motion to Dismiss his first habeas petition. See Ex. 4. Rather, his extended detention is unreasonable because there is no significant likelihood of his removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701. The purpose of 8 U.S.C. § 1231(a)(6) is to assure the alien's presence *at the moment of removal*; if that moment is not reasonably foreseeable, detention is neither reasonable nor authorized by statute. Id. at 699-700. Not only has Mr. Phoeurk been held nearly three times the length of the presumably reasonable period, but during this time, the government has given him no indication that his removal is any more foreseeable than it was when he was first taken into custody. "For detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. at 701.

If the sheer length of Mr. Phoeurk's detention were not striking enough, the silence of the U.S. and Cambodian governments regarding his case during this time renders his detention even less reasonable. As the attached exhibits demonstrate, Mr. Phoeurk has received absolutely no information from either government about when or whether Cambodian officials are likely to interview him, issue travel documents for him, or accept his return in the reasonably foreseeable future – despite the substantial initiative he has taken to expedite his own repatriation to Cambodia. Petitioner first contacted the Cambodian Embassy in Washington, D.C. to inquire about his case in May 2003, and was referred to the Ministry of Interior in Phnom Penh, Cambodia. See Ex. 11. Since then, Mr. Phoeurk and his advocate, Cecily Long, have contacted the Ministry of Interior

5

five times to inquire about his case, most recently on November 25, 2003. See Ex. 12, 13, 14, 17, and 18A. Ms. Long has also contacted the Royal Embassy of Cambodia twice, asking them to do anything they could to facilitate the issuance of travel documents. See Ex. 15 and 16. She and Mr. Phoeurk sent similar requests to BICE. See Ex. 18 and 18A. To date, they have not received any response from the Ministry of Interior, the Embassy, or BICE.[3] See Ex. 20 (Declaration of Cecily Clark Long). Mr. Phoeurk's repeated efforts to expedite his removal and obtain status updates, combined with the continued lack of response from either the U.S. or Cambodian governments, provide substantial reason to believe that his deportation is not reasonably foreseeable.

### B. BICE is Unable to Meet its Burden of Showing that Petitioner Will Be Removed in the Reasonably Foreseeable Future Because It Has Not Provided Any Information Specific to Petitioner's Individual Case

After six months, the government bears the burden of disproving an alien's "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." See Zhou v. Farquharson, 2001 U.S. Dist. LEXIS 18239, *2-*3 (D. Mass. Oct. 19, 2001) (quoting and summarizing Zadvydas). In order to meet its burden, BICE must provide sufficient evidence to rebut the petitioner's showing that removal is not reasonably foreseeable in his individual case. BICE has not met this burden, as it has not provided any evidence specific to Mr. Phoeurk's individual case, nor submitted any new evidence since its denial of Mr. Phoeurk's previous habeas petition.

Ten months have passed since Mr. Phoeurk's last custody review, yet BICE has not notified Mr. Phoeurk of any progress in his repatriation. In its June 18, 2003

---

[3] The only contact Ms. Long had with BICE was a telephone conversation with Officer John Draine, as described on page 8, *infra*, and in Ex. 20.

6

Memorandum of Law in Support of Its Motion to Dismiss Petitioner's *pro se* habeas petition (the government's most recent communication to Mr. Phoeurk), BICE asserted that when Mr. Phoeurk was taken into custody, "BCIS [sic] began efforts to secure the necessary travel documents from the Cambodian government" and "sent a request for the travel documents to the Cambodian Embassy in Washington, D.C." (citing Attachments A and B). However, Attachments A (the MOU) and B (Declaration of Deportation Officer Tammy Cyr-Talbott) do not mention a BICE [or BCIS] request or any other effort to secure travel documents in Mr. Phoeurk's case. See Ex. 4A and B. Officer Cyr-Talbott's declaration simply states that it was "anticipated that Cambodian officials will return in the near future to interview additional Cambodian nationals who are subject to final orders of removal, including Mr. Phoeurk." See Ex. 4B. She does not give any specifics about Mr. Phoeurk to substantiate her belief that he (as opposed to the any of the other hundreds of Cambodians with final orders) would be among those to be interviewed in the reasonably foreseeable future.

Evidence of successful repatriation of other persons to the country at issue is not sufficient to meet the government's burden to establish that the *petitioner* will be deported in the reasonably foreseeable future. See Norlon Thompson v. INS, 2002 U.S. Dist. LEXIS 23936 (E.D. La. September 16, 2002) (government failed to show that alien's deportation to Guyana was reasonably foreseeable when it offered historical statistics of repatriation to Guyana, but failed to show any response from Guyana on the petitioner's application for travel documents).[4] Rather, for the government to meet its

---

[4] See also Ablahad v. Ashcroft, 2002 U.S. Dist. LEXIS 17405 at *4 (N.D. Ill. September 6, 2002) (evidence that other aliens have been deported to petitioner's country is not sufficient to carry the government's burden); Fadil Kacanic v. Kenneth Elwood, 2001 U.S. Dist. LEXIS 21848 at *14 (E.D. Penn. November 8, 2002) (government's reliance on data concerning removals of other aliens to Yugoslavia did

7

burden of showing that an alien's repatriation is reasonably foreseeable, it must provide specific evidence of progress in that alien's case. Cf. Khan v. Fasano, 194 F. Supp. 2d 1134 at **2, 4, 9 (S.D. Cal. 2001) (eight-month detention following final order was not unreasonable where INS requested travel documents for petitioner, Pakistani Consulate indicated that petitioner's travel document application had been forwarded to the appropriate ministry, a meeting was scheduled with Pakistani government to discuss petitioner's case, and INS had successfully repatriated *476* Pakistani nationals during 2001 – suggesting a lack of "institutional barriers" to successful repatriation).

Mr. Phoeurk's own deportation is even less foreseeable given the very small percentage of Cambodians with final orders who have been repatriated to date – only 78 out of a total of approximately 1,000 (possibly 1,500). See Ex. 5 (Declaration of Jay W. Stansell) at ¶¶ 4, 9. "At the current rate, it would take about a decade to deport those 1,600 already eligible." See Ex. 21 (Deborah Sontag, "In A Homeland Far from Home," *New York Times Magazine*, Nov. 16, 2003, p. 52). Evidence suggests that the removal rate is not likely to increase. See Ex. 5 at ¶¶ 12.

Even if other Cambodians are repatriated in the upcoming months, however, there is no reason to believe that Mr. Phoeurk will be among them. See Ex. 5 at ¶ 10.[5] The Cambodian government has still not indicated whether or when it would interview him to determine his eligibility for repatriation – a necessary precondition to issuing travel

---

not satisfy Zadvydas because government failed to give information about the number of aliens that were *denied* travel papers and to provide individualized information about the removed aliens that would allow "a meaningful comparison" between them and the petitioner).

[5] Reports of Cambodian officials' procedures for screening detainees to determine who would be issued travel documents indicate that their questions focused on detainees' ties to Cambodia. See Ex. 5 at ¶ 10. Mr. Phoeurk has lived in the United States since he was a boy and has no memory of Cambodia, nor any family remaining there. He does not have a Cambodian passport. He cannot write Khmer and fears that the Khmer spoken in Cambodia today is different from that which he learned in the Cambodian refugee communities in Thailand and the United States.

documents. See Ex. 4B. In fact, when Ms. Long called BICE's Boston office to inquire about Mr. Phoeurk's case on November 10, 2003, Officer John Draine informed her that, to his understanding, Cambodia was not issuing travel documents at this time and would not likely issue documents for someone with Mr. Phoeurk's background. See Ex. 20.

An alien who has been detained beyond the presumably reasonable six months should be released when BICE is unable to present documented confirmation that the foreign government will accept the particular individual. See Cyriacus Agbada v. Ashcroft, 2002 U.S. Dist. LEXIS 15797 (D. Mass. August 22, 2002) (court "will likely grant" habeas petition after fourteen months if BICE "is unable to present documented confirmation that the Nigerian government has agreed to [petitioner's] repatriation"); Zhou, 2001 U.S. Dist. LEXIS 18239 (ordering issuance of a writ of habeas corpus, given petitioner's 13-month detention and the INS's inability to prove that the paperwork from China was on its way); Mohamed v. Ashcroft, 2002 U.S. Dist. LEXIS 19050 at *7 (W.D. Wash. February 28, 2002) (government's failure to offer specific information regarding how or when it expected to obtain the necessary documentation or cooperation from the foreign government indicated that there was no significant likelihood of petitioner's removal in the reasonably foreseeable future); Kacanic v. Elwood, 2002 U.S. Dist. LEXIS 21848 at *11-*12 (E.D. Pa. Nov. 8, 2002) (where alien had been detained for one year, lack of a definitive answer from foreign embassy as to issuance of travel documents, or indication that such was likely – showed that removal was not reasonably foreseeable). Having given no indication that it has received *any* response from Cambodia concerning Mr. Phoeurk, BICE has failed to meet its burden of rebutting Petitioner's showing that his removal is not reasonably foreseeable.

II.     <u>Petitioner's Continued Detention Violates His Right to Substantive Due Process by Depriving Him of his Core Liberty Interest in Freedom from Bodily Restraint When No Compelling Government Interest Exists</u>

Mr. Phoeurk's continued detention violates his right to substantive due process by depriving him of his core liberty interest to be free from bodily restraint. The Due Process Clause requires that the deprivation of Mr. Phoeurk's liberty be narrowly tailored to serve a compelling government interest. While the Respondents would have a compelling government interest in detaining Mr. Phoeurk in order to effect his removal, that interest does not exist if Mr. Phoeurk cannot be deported. The Supreme Court in <u>Zadvydas</u> thus interpreted INA § 241 to allow continued detention only for a period reasonably necessary to secure the alien's removal because any other reading would go beyond the government's articulated interest – to effect the alien's removal.

III.     <u>Petitioner's Continued Detention Violates His Procedural Due Process Rights Under the Fifth Amendment of the United States Constitution Because He Has Been Denied a Timely and Meaningful Opportunity to Demonstrate That He Should Not Be Detained</u>

Under the Due Process Clause of the Fifth Amendment of the United States Constitution, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. The Petitioner in this case has been denied that opportunity as there is no administrative mechanism in place for the Petitioner to demand a decision, ensure that a decision will ever be made, or appeal a custody decision that violates <u>Zadvydas</u>.

## CONCLUSION

For all the foregoing reasons, Petitioner respectfully requests that this Court grant his petition for a writ of habeas corpus, directing the Respondents to immediately release the Petitioner from custody. Petitioner further requests that Respondents refrain from transferring him out of the jurisdiction of the BICE Boston District Director during the pendency of these proceedings and while the Petitioner remains in Respondent's custody, and grant any other and further relief which this Court deems just and proper.

Respectfully submitted,

*Alexandra Dufresne*
Alexandra Dufresne, BBO #654959
Catholic Legal Immigration Network, Inc./
Boston College Immigration and Asylum Project
885 Centre Street
Newton, MA
(617) 552-0593 (voice)
(617) 552-2615 (fax)
alexandra.dufresne.1@bc.edu
for Petitioner Tang Phoeurk

February 6, 2004

## CERTIFICATE OF SERVICE

I, Alexandra Dufresne, hereby certify that I served a true copy of the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and the accompanying Petitioner's Memorandum of Points and Authorities in Support of His Petition for a Writ of Habeas Corpus, together with attached exhibits, on

Bruce Chadbourne, Interim Field Office Director
DHS/BICE: Detention and Removal Office
JFK Federal Building, 17th Floor
15 New Sudbury Street
Boston, MA 02203

by placing them in a FedEx dropbox late February 6, 2004 with delivery scheduled for Monday, February 9, 2004.

I also certify that I served a true copy of the above-mentioned documents (including exhibits) on

Attorney General Ashcroft
United States Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530-0001

And

Kathleen M. Denneby, Acting Commissioner, Mass. Dep't of Correction
Central Headquarters
50 Maple Street
Milford, MA 01757

By placing a copy of the above in the U.S. mail at Boston College Law School on February 6, 2004

Dated: 2/6/04                    _Alexandra Dufresne_
                                  Alexandra Dufresne